RECEIVED
Mail Room
JUL 26 2012
United States Court of Appeals
District of Columbia Circuit

In Re: Antoine Jones NO: 11-5191 (C.R. no 07-1027)

## Reply to Federal Appellee's Response to Petition for Writ of Mandamus.

Petitioner like to Put on RECORD THAT
the Federal Appellee's HAS conceded to
Petitioner 60(B) motions (FRAUD on the
court) because they not once oppose
or Respond on Petitioner truthful
FRAUD on the court claims or very
least Response to the specific claims
such As (1) Receiving And Listening to
shipment of Petitioner DC Jail calls
without any Legal court authority,
(2) unknown FBI Agents illegally entering
And illegally searching Petitioner DC Jail
cell (NW-1 unit) without A search
WARRANT, (3) Violating Petitioner Attorney
client-communication privileges when F.B.I
Agents unlawfully enter Petitioner
D.C. Jail Cell (SE-2 unit) confiscating
material and document "PREPARED" For
MR BALAREZO Petitioner lawyer. (4)
illegally Placing Petitioner in solitary
confinement - segregation - under Total
separation status, stripping Petitioner
From His due Process Rights such As

A-WD

"NO Legal calls to His lawyer," no
"Access to law library," no phone
privileges, no social visits privileges,
no mail privileges - incoming and out
going mail, these severed restriction was
done with out a proper show cause
Hearing or any legal court authority,
which the above mentioned claims are
constitutional violation.

If Petitioner over ride the "untimely"
argument by the Appellee's, this court
should "considered the federal Appellee's
non response to the numerous Rule 60(B)
motions as being conceded.

### 60 (B) (3)

Rule 60(c) sets the time limits for a
motion under Rule 60(B) specifically
providing that the motion "must" be
filed no later than one year after
entry of the Judgment or other challenge
Fed R. civ. P. 60(B)(3) fraud, disHonesty,
misRepresentation or misconduct by an
opposing party.

Petitioner Jones sought Relief from
the court of Appeals Judgment entered
on "February 11 2011 - Jones V. Horne 634
F3D 588 DC CIR 2011."

Time Line In Re Antoine Jones No: 11-5191

February 11 2011 - Jones V Horne 634
F3D 528 DC CIR 2011 - Court of Appeal decisioned
April 28 2011 - Jones submitted 60 (B)
motion to District Court
May 20 2011 - Honorable Judge Leon denied
Jones Leave to File civil complaint on 60 (B)
Fraud on the Court Claims.
July 14 2011 - Notice of Appeal - Appealing
District Court denying Leave to file 60 (B) motion.
November 17 2011 - Supplement motion
Jan 20 2012 - Supplement motion - 60 (B)

As the Court could Review, from
February 11 2011 "Final Judgement" in
Jones V Horne 634 F3D 588 DC CIR 2011,
Petitioner on April 28 2011 - (two months
later, submitted A 60 B - Fraud on the
Court motion to the District Court which
was denied Leave to File)

Submitting in A 60 (B) motion (two months
later) After the Final Judgment in Jones V
Horne, on the decisioned in Jones V Horne
is Far from the year limittation,

The Federal Appellee's could duck and
dogged that they didnt Have a subpena or

Any legal court order to receive a volume and shipments of petitioner DC Jail calls, but in numerous of the Appellee's litigation they had admitted that they receive my DC Jail calls. (Exhibit # 1) is United State Attorney memorandum stating: "According to Jail records investigator received last Friday December 16 2005 and examined this week..... I have attach copies of the most recent Dept of correction call logs."

(Exhibit # 4) is District of Columbia Dept of correction program statement (4270.1B) Inmate Telephone Access,

monitoring and recording inmate Telephones. 13.E: Reads, Call data records and recording of inmates telephone calls are "considered sensitive and shall not be released without a subpoena or other Appropriate legal order"

Without a subpoena or legal court order it's clear and convincing evidence that the Appellee's violated my 4th Amendment rights.

Petitioner also argues that the Government has been concealing the fact the their Investigators unlawfully enter and search petitioner DC Jail cell on "December 2 2005", a clear violation of petitioner 4th Amendment rights.

Exhibit # 3 is Antoine Jones sworned affidavit and Exhibit, # 4 is Terrence Saunders affidavit, both corroborate the unlawful search of Petitioner cell on "December 2 2005".

Attorney client-communication Privilege

A tainted team of FBI Agents enter and searched Petitioner DC Jail cell on November 23 2005 seized Attorney client-communication material and gave it to the Prosecutors who was prosecuting this case. To corroborate this Attorney client communication violation, I will submit (Exhibit # 5) Redacted version of 3-24-2006 11:30am Hearing. Where mr Balarezo explained to the court that He is an officer of the court who represented that He instructed me to prepare for my case by seeking out potential witnesses and find out if there's any Potential Government witness cooperating Page (P615, 16, 17, 19, 21, 22). (Page 23, 24, 25 - Exhibit #6) Here Petitioner complained and discuss some issues in this complaint... The court agree that I should Have more "Humane" condition that side order me out of Solitary confinement and also agree that I should Have Access to the lawlibrary, Access to call my Lawyer and my investigator (P6 25 line 14-17, P6 26 line 1-8, P6 28 line 17-20, P63) line 1 - 4) (Exhibit 7 Petitioner conclude that this 60B fraud on the cou should be Remanded back to District court with Inst

Respectfully Submitted

Antoine Jones
241 912
1901 D St SE
WDC 20003
Date 7-23 2012
Sign. Antoine Jones

Certificate of service

I certify that, on this 23th day of
July 2012, a copy of the foregoing
Petitioner Reply to the Government-
Appellee's Opposition motion was sent
through DC Jail mail process, to
AUSA
MR Alan Burch
555 4th St NW
WDC 20530

(EXHIBIT #1)

DEC 22 2005 12:42 FR VWAU                                          ▓▓▓▓▓▓▓ TO ▓▓▓▓▓▓        P.02/11

## Memorandum

*United States Attorney*
*District of Columbia*

| Subject: | Date: |
|---|---|
| Continuing Problems with Prisoner Antoine Jones, DCDC 241-912 | December 22, 2005 |

| To: | From: |
|---|---|
| Warden, District of Columbia Jail | ▓▓▓▓▓▓▓▓▓▓ Assistant United States Attorney |

On November 23, 2005, the United States Attorney's Office made a written request to the D.C. Jail, that the aforementioned prisoner, Antoine Jones (DCDC 241-912) be placed in protective custody, based on growing concerns that Mr. Jones was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in his narcotics conspiracy case being prosecuted in United States District Court for the District of Columbia. Nine days later, on December 2, 2005, it came to my attention, while ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that he was continuing to make telephone calls from the Jail, which led me to believe that he remained in population. With the aid of members of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ I learned that Jones did, indeed, remain in population. Thus, we renewed our request to have him transferred to protective custody, to ensure the safety of various individuals, and the integrity of the investigation.

*Here* ➔ According to Jail records investigators received last Friday, December 16, 2005, and examined this week, while Jones has been transferred to protective custody, he continues to somehow have telephone privileges. This completely undermines the purpose of his being in that placement - ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Indeed, some of the basis for the government's concern regarding Jones's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

*Here* ➔ I have attached copies of the most recent Department of Corrections call logs, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

DEC 02 2005 15:28 FR UWAU                                    P.02/02

# Memorandum

*United States Attorney*
*District of Columbia*

| Subject: | Date: |
|---|---|
| Request for Lockdown<br>Antoine Jones<br>DCDC 241912 | December 2, 2005 |

| To: | From: |
|---|---|
| DC Jail | USAO/DC |

AUSA ~~████████~~ has indicated in a previous request, dated November 23, 2005, that inmate Antoine Jones, DCDC 241912 should placed immediately in lockdown at the DC Jail. Please ensure that Mr. Jones is lockdown until further notice.

If you have any questions, please call me at (2) ████████ or Rachel Lieber at (2) ████████

Thanks

(Exhibit #1)

DEC 22 2005 12:42 FR VWAU                    TO                    P.03/11

The U.S. Attorney's Office and the F.B.I. are very concerned that Antoine Jones ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Please consider this memorandum a formal request for an immediate investigation into this situation, to include an examination of how these clear violations occurred, and more importantly, an immediate correction of the problem.

Please feel free to contact me at (202) ▮▮▮▮▮▮▮ (office) or (202) ▮▮▮▮▮▮▮ (cell), if you have any questions.

2



**DISTRICT OF COLUMBIA**
**DEPARTMENT OF CORRECTIONS**

# Program Statement

| | |
|---|---|
| **OPI:** | **PROG** |
| **Number:** | **4070.1C** |
| **Date:** | **July 8, 2010** |
| **Supersedes:** | **4070.1B (4/30/07)** |
| **Subject:** | **Inmate Telephone Access** |

1.  **PURPOSE AND SCOPE.** To establish guidelines governing inmate telephone access.

2.  **POLICY.** It is the policy of the DC Department of Corrections (DOC) to ensure that all inmates housed at the Central Detention Facility (CDF) have reasonable and equitable access to telephones for authorized purposes.

3.  **PROGRAM OBJECTIVES.** The expected results of this directive are:

    a.  Inmates shall be afforded the opportunity to maintain family and community ties consistent with safety and security requirements of the CDF and the community.

    b.  Inmates who are not indigent shall be responsible for the expense of telephone use.

    c.  Inmate telephone use shall be monitored in order to preserve the safety, security and orderly operation of the CDF and to protect the general public.

4.  **APPLICABILITY.** This policy shall apply to DOC inmates, employees, contractors, volunteers, interns and any others who provide services and conduct business within the DOC.

5.  **NOTICE OF NON-DISCRIMINATION**

    a.  In accordance with the D.C. Human Rights Act of 1977, as amended, D.C. Official Code §2.1401.01 et seq., (Act) the District of Columbia does not discriminate on the basis of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, matriculation, political affiliation, genetic information, disability, source of income, status as a victim of an intra-family offense, or place of residence or business. Sexual harassment is a form of sex discrimination that is also prohibited by the Act. Discrimination in violation of the Act will not be tolerated. Violators will be subject to disciplinary action.

    b.  DOC prohibits discrimination against inmates based on an inmate's race, religion, national origin, gender, sexual orientation, disability or any other type of prohibited

(Exhibit #2)

PS 4070.1C
Page 5 of 5

  6)   If the inmate was unable to make contact to the attorney or their representative;

  7)   Name and signature of the staff member and inmate placing the call.

e.  If a staff member other than the inmate's Case Manager places the call, he/she must forward a copy of the log entry to the Case Manager to be placed in the inmate's case file.

f.  Legal calls shall be made from a private area where there is limited access for others to overhear the conversation.

## 12. TELECOMMUNICATION DEVICE FOR THE DEAF (TDD)

a.  TDD's shall be provided for inmates who are deaf or hard of hearing in a manner that ensures effective access to telephone services.

b.  Telecommunications Typewriters (TTY) shall be provided for inmates to communicate with family members or friends who are deaf or hard of hearing.

c.  ITS telephones equipped with volume control mechanisms shall be dispersed among the ITS telephones throughout CDF. Appropriate signage shall be visible to identify a volume control telephone.

## 13. MONITORING AND RECORDING INMATE TELEPHONES

a.  The audio and call data for all calls made from ITS telephones will be recorded.

b.  Calls made from the ITS telephones may be monitored live.

c.  Call data from the ITS may be analyzed.

d.  Recorded ITS telephone calls may be reviewed.

e.  Call data records and recordings of inmate telephone calls are considered sensitive and shall not be released without a subpoena or other appropriate legal order.

*Here →*

## 14. PROCUREMENT OF INMATE TELEPHONE SERVICES

a.  Contracts for inmate telephone service must comply with all federal and District of Columbia laws and regulations.

b.  Requests for proposals shall require vendors to provide rates that are similar to those charged in the community and to justify any rates or surcharges higher than ordinary commercial rates. Rates should be based on the broadest possible range of calling options.

Devon Brown
Director

SWORNED DECLARATION OF
Antoine Jones

(Exhibit #3)

I Antoine Jones swears under penalty of perjury that these statement is accurate, correct and true.

Mr Jones will point out His Attorney client-communication violation and 4th Amendment violation. While He was in DC jail during the period of late october thru early December 2005.

During the primary meeting and consultation with mr Balarezo my criminal lawyer, me and mr Balarezo discussed my defense and what we needed to do to prepare for trial.
His advice was for me to look for potential witnesses to interview and seek out potential Goverment cooperators who might testified against me.

I told mr Balarezo I will start with the affidavits He gave me with targets names and

confidential sources information

WHILE I WAS studying the AFFiDAViTs to Assist MR BALAREZO to PREPARE my case, I would write down names in FRom the AFFiDAViT who could be potential witnesses for the defense and who might be cooperators and potential Government witnesses.

I Also would put down phone numbers, family, friends, loved ones and business Associates that I believe will help Assist my Investigators.

WHile I prepared this document for my lawyers, sometime on or about november 23 2005, three FBI Agents presented a search warrant to search my DC Jail cell in SE-2 unit.

one of the Agents I recognize as the Agent who searched my house which tell me He wasnt PART of An untainted team, plus Another

one of the Agents testified at my
trial and mentioned that he was
part of my investigation by monitoring
my wire tap which show me he was
Another Agent who wasn't part
of an untainted team.

These very same Agents who
investigated me was the same
Agents who searched my D.C.JAIL
cell and seized attorney client
communication material and
gave this material I prepared
for my counsel to the Prosecutor
who investigated and Prosecuted my
case.

Also, on December 2 2005 some
FBI Agents enter and searched my
DC Jail cell, and while they was
in there they took Photo's of my
mail. I will refer the court to
mr Terrence Saunders sworn
Declaration, some one who out of
the blue told me he Remember
me from the detail block NW-1 unit,
when the block was lock down so
the FBI agents could searched my

cell. I swear under penalty of perjury that my cell-mate and "Seargent Porter" told me that some federal agents searched my cell on December 2 2055 the same day I was place in solitary confinement under total seperation, stripping away my social visits privileges, mail privileges and phone privileges, I was not able to called my lawyer, while every one else on my tier could make legal calls I was denied legal calls.

I ask my cellmate was He ForSure they was feds, He said "yes" they introduce their selves as federal agents and they was only interesting into searching my property and my side of the room.

I been due diligently complaining to the warden at D.C Jail (Appellee warden Harrison) and to the courts and no one will respond on this unlawful searched, not even the appellees.

Until today I Havent received

A searched warrant from the December 2 2005 search which is clearly a Rule 41 F violation and my 4th amendment rights violation.

## conclusion

I will conclude by saying Norma Horne affidavit for my DC Jail cell searched on november 23 2005 was reckless, misleading, deceiving, and all the allegations untrue a CLEAR violation of 18 USC § 2235 because the entire allegation of obstruction of Justice in her cell searched affidavit and in the government theory is bogus, false and reckless disregards to the truth, reason being Detective Norma Horne and Government listen to my illegal DC Jail conversation and knew for a fact I wasn't obstructing Justice or was trying to tamper with any witnesses or try to kill any one.

Speaking of DC Jail conversation, the government gave me in my Discovery, a volume of my DC Jail

calls that my biographio did some researched and found out that the government didn't HAVE a subpoena or court order to received shipments of my DC jail conversation violating my 4th amendment Rights and District of columbia Dept of corrections - Program statement 9101.13 Inmate Telephone access (Monitoring and recording inmate Telephones 13.E.)

I listen to all my DC Jail conversation the government Produce to me and no way possible could any one get obstruction of Justice from all the innocent conversation.

To be place in separation or total separation and have no show cause Hearing was uncalled for and unreasonable and I should be able to proceed in District court to show and prove my truthful claims

Respectfully submitted

Sign Antoine Jones

Date 9-23-2012

1901 D st SE

WDC 20003

Teresa Washington
Notary Public, District of Columbia
My Commission Expires 5/14/2015

966

EXHibiT # 4 (I)

July 22, 2012

I swear under penalty of perjury (28 USC 1746) that this sworn affidavit is accurate, correct and true.

I Terrence Saunders want to elaborate about a incident that occurred when I was housed on the detail block in the time frame of December of 2005.

During this time a incident occurred when the block was temporary locked down for a short period due to some federal agents entering the block on the side of cells 41 to 80 and searched a cell.

After the search the block was re-opened by Sgt. Porter. Thats when everyone came back out and was wondering what was occurring. At that time I overheard people talking about it was the FBI, And they was searching the dude from the Level's night club case. Later on it was founded out to be Mr. Jones cell. His cell mate had told people that it was the FBI and they supposedly took pictures of his mail and property.

The entire unit was discussing this matter because at the time it was

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------X

THE UNITED STATES OF AMERICA         Criminal Case No.

              v.                     05-386

ANTOINE JONES, et al,                REDACTED

              Defendants,
------------------------------X      Washington, D.C.
                                     March 24, 2006
                                     11:30 A.M.


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE ELLEN SEGAL HUVELLE
UNITED STATES DISTRICT JUDGE

APPEARANCES:
For the Government: JACK GEISE, ESQUIRE
                    RACHEL LIEBER, ESQUIRE
                    Office of the U.S. Attorney
                    555 4TH Street, N.W.
                    Washington, D.C.  20560
                    (202) 616-9156


For Defendant Jones: EDUARDO BALAREZO, ESQUIRE
                     400 Fifth Street, N.W.
                       Suite 500
                      Washington, D.C.  20001
                     (202) 639-0999


Court Reporter:         Lisa Walker Griffith, RPR
                        U.S. District Courthouse
                        Room 6507
                        Washington, D.C.  20001
                        (202) 354-3247

Proceedings recorded by mechanical stenography,

transcript produced by computer.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

```
 1                    P R O C E E D I N G S
 2              THE COURTROOM DEPUTY: Criminal case
 3   05-386-1.  United States of America versus Antoine
 4   Jones.  John Geise for the United States.  Eduardo
 5   Balarezo for the defendant.
 6              MR. GEISE:  Your Honor, we call Detective—
 7              MR. BALAREZO:  Your Honor, before the
 8   detective takes the stand, could we approach?
 9              (The following bench conference was sealed
10   and deleted by Order of the Court.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

need unredacted

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Ncew unaudacted [11]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                    (Open Court)

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

15

1  that issue of the safety of these supposed informants,

2  at least the information that's been made available to

3  me is that, there were rumors that, as the government

4  filed in its last papers, rumors that the guys from

5  Level sought to do some harm to these informants.  If

6  the government is, if that's all they're presenting to

7  the Court in this sealed filing, we submit that that

8  is not enough.

9        THE COURT:  Why do you say?  I mean, you are

10  trying to find out where certain people are located,

11  located in the jail.  I don't find that very

12  comforting.

13        MR. BALAREZO:  Your Honor, I have no

14  problems saying this to the Court.  It is my procedure

15  in normal cases and it is my procedure in this case, I

16  meet with Mr. Jones.  I interview him.  I try to get

17  whatever information I can from him to investigate the

18  case and find out what is going on.  I ask all my

19  clients, who are witnesses, who was out there, who did

20  what?  Who may be cooperating against you, who would

21  have a reason to say these things, whatever?  I think

22  the Court understands.  That's what I've done in this

23  case.

24        THE COURT:  Sir, I find it a little bit

25  precarious that -- did you want to know where somebody

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

16

1    was located, whether they were in the jail or not in

2    the jail?  Are you telling me before these letters

3    were written you asked for that specific information?

4        MR. BALAREZO:  Probably the first or second

5    meeting with Mr. Jones, that's the type of thing we

6    discussed.  Of course I want to know what kind of

7    witnesses could be found so I can start locating them

8    and talk to them.

9        Of course, I want to know where possible

10   informers are found because then I can get an idea of

11   what their situation is.  And if they can be spoken

12   to, I would try to speak to them under my ethical

13   obligation.

14       There is absolutely nothing wrong with that.

15   Unless the government is presenting to the Court, some

16   tangible evidence, something beyond the rumor that

17   Mr. Jones is trying to either harm these people, has

18   asked other people to harm these individuals, the

19   government should not be able to have Mr. Jones locked

20   down in the way he is.

21       THE COURT:  I'll send him to Orange.

22       MR. BALAREZO:  Your Honor, then, all that is

23   doing is putting him 200-miles away.  The government's

24   problem is Mr. Jones' communication with the outside,

25   not within the jail.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

17

1    THE COURT:  No, that's a problem, too.

2  They're worried about that too.

3    MR. BALAREZO:  Your Honor, I'm worried about

4  a lot of things, but it doesn't mean it is going to

5  happen.  It seems like that's where we are, just

6  conjecture and rumor.

7    THE COURT:  I don't view it as just

8  conjecture and rumor.  I'm just telling you that.  I

9  agree that they don't have anybody putting in his

10  mouth or on his paper, I want you to wipe out so and

11  so.  I agree.  I don't actually buy your notion that

12  all this work to find out where people were located

13  was just because you are interested.

14    MR. BALAREZO:  Your Honor, I make that

15  representation as an officer of the Court.  And the

16  Court can do, obviously take it as it will.  But

17  that's my representation and that is my standard

18  practice.

19    THE COURT:  I have to tell you this, sir.

20  In the future, you know, the people have, there are

21  lots of ways to find out where people are located

22  other than having your client go and contact people by

23  letter looking for people.  It is a very curious sort

24  of situation, but anyway.  I want to see whether we

25  can't get him in Northern Virginia.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

19

1   I really have not explored with them the Virginia

2   facility because in this particular case and the

3   government's mind distance does have some advantages.

4   But I will explore them with the marshals, Your Honor,

5   and report to the Court.

6           THE COURT:  What I want to know is, and

7   let's get it right this time, I want to know, first of

8   all, whether in the D. C. jail, he can have his

9   conversations, visits monitored.  He would have to

10  consent obviously other than with counsel.  And

11  whether they can't up the amount of time he's out of

12  the cell.  Twenty-three hours in lock down is really a

13  lot of time.  We're talking --

14          MR. BALAREZO:  Again, Your Honor, it is not

15  just the lock down, it is the loss of all of his other

16  privileges.

17          THE COURT:  Which are?

18          MR. BALAREZO:  Loss of social visits, the

19  phone calls.  He has no real access to the law

20  library.  The way it works because he is locked down,

21  he basically gives some lady a slip of paper making a

22  request.  And she'll bring it to him whenever she

23  feels like it.  Mr. Jones is a very intelligent man.

24  He's trying to do a lot from inside to help me out, to

25  help me defend him.    And he can't do it because he

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

21

1          THE COURT:  Correspondence between your

2    client and the outside world is very unfortunate

3    because that's not the way in good faith I can leave

4    it.

5          MR. GEISE:  I hate to be snide, Your Honor.

6    But it is that very rapid communication with the

7    outside world and the prisoner that is worrying the

8    government.

9          THE COURT:  What is the date of the letter?

10         MR. GEISE:  What the letter has stated, Your

11   Honor, we know when the search took place, but that

12   was from a cell search.  So, obviously the defendant

13   received it before this, after his arrest and before

14   the cell search.

15         MR. BALAREZO:  Your Honor, the cell search

16   was December 2 is my understanding.  My understanding

17   is that Mr. Jones was placed in lock down the same

18   day.  So for the government, I think, to rely on

19   evidence seized during the search to place him on lock

20   down is a little, well -- he went into lock down that

21   very day.  I think the order was signed -

22         THE COURT:  December 2, yes.  But doesn't

23   that mean that the government gets this letter and

24   says I'd better worry?  That's exactly, that's less

25   shaky than anything else.  This letter is one of the

(Ξxнιбιτ #Σ)

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

22

1   main reasons why one is concerned.  The last paragraph

2   gives me great concern.

3           MR. BALAREZO:  The very last paragraph, Your

4   Honor?

5           THE COURT:  Yes.  So that, coupled with, I

6   am most concerned about lists.  Did you get these

7   lists, counsel, these lists that show up here with

8   this sort of --

9           MR. BALAREZO:  Your Honor, the government

10  provided them to me after the search.  I can tell you

11  the numbers.

12          THE COURT:  I can't read some of it.

13          MR. BALAREZO:  Looking at B-1, Your Honor,

14  there is a list in the middle that is numbered one

15  through 13 it seems.  The first number is Mr. Jones'

16  wife, the second number is his nephew.  The third

17  number is --

18          THE COURT:  Nobody is concerned about one

19  through 13.  But you are saying that, all you are

20  telling me is that he put this together for you.  Is

21  that what you're saying?

22          MR. BALAREZO:  At my direction.  Your Honor,

23  keep in mind, the government is charging Mr. Jones

24  with some very serious offenses.  He was involved with

25  whatever he was involved in, so he was the person

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

23

1   there not me, so I had to get the information from

2   you.

3             THE COURT:  He wants to talk to you.

4             (The defendant consults his counsel.)

5             MR. BALAREZO:  Probably against my advice,

6   Mr. Jones wants to address the Court about that

7   specific issue about the list.

8             THE COURT:  Fine.  I'm not putting him under

9   oath.  Let him say what he wants to say.

10            Go ahead, you can say it from there.

11            THE DEFENDANT:  I'm trying to understand.

12   Because it seems like right now I'm being railroad.

13   You are talking about a list that I can break down to

14   you.  It is a telephone list.

15            Okay.  My lawyer asked me, we're trying to

16   prepare for a case.  Okay, he asked me about certain

17   witnesses that we talked about.  Okay.  This list that

18   y'all talking about, it is a telephone list.  If you

19   go to my cell now, you'll see the same similar list.

20   I don't remember everybody's number.

21            THE COURT:  There are other names on the

22   list that don't have telephone numbers, on the left

23   side.

24            MR. BALAREZO:  Is it B-1, Your Honor?

25            THE COURT:  Yes B-1, it has two Xs and it

(EXHIBIT #6)

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

24

1    list five names or so.

2              MR. BALAREZO:  The ones on the left, Your

3    Honor?

4              THE COURT:  Yes.  Those don't have telephone

5    numbers.

6              THE DEFENDANT:  These are mental notes.

7    While we're here, do you want me to go over the mental

8    notes?  This is what I do, Your Honor.  I'm saying,

9    these are my mental notes.  So, sometimes when I write

10   something down, I might write it down.  This is not a

11   list.  If you look at my record, I'm not violent.  I

12   would not do anything that would send me to hell.  So

13   this right here is just mental notes.

14             If you want me to go over the mental notes,

15   it said Buck.  That's a promoter.  This is something

16   that I, when I go over, when I read my affidavit, if I

17   read an affidavit, I could bring you the affidavit,

18   these are stuff that come out of the affidavit.

19             Buck is Diane Bushrod.  You know, these are

20   names of people that is in the affidavit.  That's all

21   this is.  This is something right here that is going

22   to help my lawyer to prepare for my case.  I'm just

23   trying to get a fair trial here.

24             You can send me to Orange County, it would

25   be the same thing.  So, unless you are going to say,

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

25

1   right now, I'm in the hole 23 hours.  I don't get a

2   visit.  No social visits.  No ties.  I can't

3   communicate to try to fight for my case.  I don't get

4   on the phone.  If I can't get on the phone, I can't

5   call my investigator when I need to.  I can't call my

6   lawyer when I need to.

7           I don't get no mail.  I don't get no due

8   process.  So I'm sitting in the hole basically feel

9   like I'm hostage, can't prepare for my case.  But

10  then, you tell me that I can't take mental notes from

11  my affidavit.  These are telephone numbers.  If I want

12  to call somebody, I don't remember everybody's number.

13          THE COURT:  Sir, excuse me.

14          Mr. Geise, you have to solve certain

15  problems.  He should have free access by phone or

16  otherwise, to investigators who work for Mr. Balarezo

17  and to Mr. Balarezo.

18          Number two, we have to get him out of there

19  23 hours a day.  I agree that the first choice should

20  not be Culpepper in Orange County. I agree.  So you

21  have to get him over to Virginia if you are worried

22  about this.  Or alternatively, have some other less

23  restrictive than 23 hours.  You have to do it.

24  Otherwise, he will get more privileges than he is

25  getting.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

26

1          But if the jail is restricting him in any

2    way from calling his lawyer or his investigator, who

3    works for the lawyer I assume-- Right?

4          MR. BALAREZO: Yes, Your Honor.

5          THE COURT: That's not. You can't do that.

6          There is no reason in the world, it seems to

7    me, that he can't get access to the law library. You

8    cannot do this.

9          MR. GEISE: Your Honor, I will explore what

10   they can do in those other facilities. As I said, I

11   know Orange is at a distance. But at Orange, he would

12   have that access.

13         But I will explore with the marshals what

14   they can do in the various facilities.

15         THE COURT: I've offered him Orange. I'm

16   trying to work with him. I can force him to go to

17   Orange if he wants it, you know that. Then, he won't

18   have any complaints about 23 hours a day. I'm trying

19   to find a middle ground.

20         MR. BALAREZO: Your Honor, again, we would

21   be amenable to either Arlington or Alexandria. It's

22   not as close and we can live with that. But Northern

23   Neck or Orange, I know other people do it, but it is

24   just not the best situation, Your Honor.

25         THE COURT: No, this is not the best but

( EXHIBIT H )

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

28

1          MR. BALAREZO:  No, Your Honor, because at

2    CTF they have a specific unit for cooperators, no

3    contact.

4          THE COURT:  Denied, that's not safe.  I'm

5    not putting -- all right.

6          MR. GEISE:  Your Honor, I will explore with

7    the marshals what the options are in all those

8    facilities and report back to the Court hopefully by

9    Monday and Mr. Balarezo, obviously, what the options

10   are.

11         THE COURT:  He's in trial on Monday.

12         MR. BALAREZO:  Monday we're starting at

13   1:30.

14         MR. GEISE:  I'll talk to the marshals and

15   just report back.  I'm not sure what options they

16   have.

17         THE COURT:  I think you better do better.

18   I'm telling you, I'm ordering it.  So, it's not a

19   question of just, you either have to find more humane

20   conditions in the jail and propose them or Northern

21   Virginia.

22         MR. GEISE:  Your Honor, I will tell the

23   Court candidly, my wife orders me to do better.  I'm

24   not sure what the Court means by doing better.  I will

25   explore every option and report back.

(EXHIBIT #9)

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

31

1    THE COURT:  In know way can we interfere

2  with his calls or conversations with you or the

3  investigator.  That's clear.  And I don't know what,

4  all right.

5    Can we get a report on 12:15 so we can make

6  some resolution?

7    MR. GEISE:  I'll report everything I know.

8  I'm not sure I'll know everything but I'll report

9  everything I know.

10    THE COURT:  I don't want to have a

11  frustrating time here.  I need more information.

12    MR. GEISE:  I will do my level best to

13  gather that, Your Honor.

14    MR. BALAREZO:  Your Honor, whatever we have

15  on Monday, could it be possible that Mr. Jones not be

16  brought up?

17    THE COURT:  No.

18    MR. BALAREZO:  You want him here?

19    THE COURT:  He has a right to be here.  I

20  just don't know what's going to happen at 12:15 on

21  Monday, that's the problem.

22    MR. GEISE:  Let me suggest this, Your Honor,

23  if I might, I will talk to the marshals, I'll put what

24  they tell me in writing, and get it to the Court

25  sometime  Monday, e-file it.  Then, Mr. Balarezo can